### OHIO EX REL. RODGERS V. BOARD OF EDUCATION OF COLEBROOK TP. ET AL.

SECTIONS 3927–1 REV. STAT. ET SEQ. CONSTRUED.

Where a board of education, under Sec. 3927–1 Rev. Stat. *et seq.*, submits to the electors the question of centralizing the schools of the township, but before doing so determines that it will be necessary to issue bonds to secure a fund to purchase a site and erect a building for the purposes of centralization, and upon the ballots, voted at the election, there is printed for centralization of the schools and against centralization of the schools, and also for levying a tax and against levying a tax to purchase a site and erect a building, and at such election the majority of votes cast are in favor of centralization, but against levying a tax: *Held*, that a writ of mandamus will not be issued to compel the board of education to proceed and centralize the schools when it is shown that there is not sufficient funds in the treasury to provide the necessary building or buildings to accommodate the centralized schools. Neither will the board be required by such writ to levy the nfaximum tax allowed by law for conducting schools in the township, to make provision for centralizing the schools at some future time.

HEARD ON APPEAL.

Hiram E. Starkey, for plaintiff.

E. J. Betts and A. C. White, for defendants.

## COOK, J.

This action comes into this court by appeal, and is a proceeding in mandamus to require the board of education of Colebrook township to proceed and centralize the schools of such township under the provisions of Sec. 3927–1 Rev. Stat. *et seq.*

Previous to April 6, 1901, more than one-fourth of the qualified electors of Colebrook township petitioned the then existing school board to submit the question of centralization of schools under sections of the law referred to.

The school board passed a resolution to submit the question on April 6, 1901, and also resolved that it was necessary to issue bonds to purchase a site and erect a building for the purposes of such centralization, in the sum of $5,500; and it was also determined to have but one building.

On April 6, 1901, the election was held. There was printed upon the ballots voted by the electors:

" For Centralization, Yes.   For Centralization, No.

" For levying a tax to purchase a site and erecting a building for centralization of schools, not to exceed $5,500, Yes!

"For levying a tax to purchase a site and erecting a building for centralization of schools, not to exceed $5,500, No."

Upon the first proposition to centralize the schools there was a small majority in favor of it, but upon the second proposition to levy a tax to purchase a site and erect a building for the purpose of centraliz ing the schools, there was a small majority against it.

The board of education again submitted the question of levying a tax in May of the same year, to the amount of $5,000, and it was defeated by an increased majority. The board again submitted the question of levying a tax in the following November, to the amount of $3,000, which was again defeated by a still increased majority.

The board that then had control of the schools were in hearty sympathy with the plan of centralizing the schools, and did all in its power to accomplish it. It levied the maximum amount of tax, ten mills, for school purposes, and by April, 1902, had in the treasury $3,000, at least two-thirds of which could be used for the purpose of centralization. It also purchased a site at a cost of $150.

At the spring election in April, 1902, an entirely new board was elected under Sec. 3927–5 Rev. Stat., for the purpose of governing and controlling the centralized schools, and the old board disbanded and took no further charge of the schools. The new board was elected upon a platform of opposition to the centralization of the schools, and it was determinedly opposed to centralization. It reduced the levy to five mills, which was not much more than one-half the amount required to sustain the schools, and conducted the schools under the subdistrict plan as before the election upon centralization. The surplus that was in the treasury was exhausted, and the expenses of running the schools increased from $1,800 in 1901 to $2,200 in 1902.

State v. Board of Education.

After the alternative writ of mandamus was issued the present board, who are the respondents in this proceeding, submitted to the electors the question of levying a tax to procure a site and erect a building in the sum of $6,000. This was nearly unanimously voted down by the electors that attended the election, but it is shown that those favorable to centralization generally did not attend the election; the board of directors being so much opposed to centralizing the schools, and at the election, they as individuals, exerted all their influence against carrying the proposition.

On behalf of the relators it is claimed that it is the duty of the board to proceed with centralization as far as possible, notwithstanding the adverse vote on the question of levying a tax to pay the bonds that might be issued. That is, it is at least the duty of the board to continue the maximum levy of ten mills until such time as sufficient funds were provided to erect the building, which would take only a few years.

On behalf of the respondents it is claimed that the electors having voted against levying a tax to procure a site and erect a building, that they are not required to take any steps whatever toward centralizing the schools; and especially they are not required to make the maximum levy of ten mills, as that is a matter of discretion so long as they keep the schools properly provided for as they now exist.

We think the respondents are right upon both propositions.

Section 3927-2 Rev. Stat. provides:

(3927-2) Sec. 2. (Submission of question of centralization.) " A township board of education may submit the question of centralization, and upon the petition of not less than one-fourth of the qualified electors of such township district, must submit such question to a vote of the qualified electors of such township district, and if more votes are cast in favor of centralization than against it, at such election, it shall then become the duty of the board of education, and such board of education is required to proceed at once to the centralization of schools of the township and if necessary, purchase a site or sites and erect a suitable building or buildings thereon; provided, that if, at the said election, more votes are cast against the proposition for centralization than for it, the question shall not again be submitted to the electors of said township district for a period of two years." (94 O. L. 317.)

Section 3927-3 Rev. Stat. provides:

(3927-3) Sec. 3. (Conduct of election.) " All elections ordered by a board of education in pursuance of section 2 of this act shall be held at the usual place or places of holding township elections, at a regular or special election as may be determined by the board, and notice shall be

given and the election conducted in all respects as provided by law for the election of township officers, and the ballots shall have printed thereon: 'For centralization—Yes.' 'For centralization—No.'" (94 O. L. 317.)°

Section 3927–4 Rev. Stat. provides:

(3927–4) Sec. 4. (Submission of question of issuing bonds.) "Should the board of education deem it necessary to issue bonds to purchase a site or sites or erect a building or buildings for the purposes of such centralization, then the election shall be conducted as provided in section three of this act, but in such case the ballots shall have printed thereon: 'For levying a tax to purchase ——— site (or sites) and erect ——— building (or buildings) for the centralization of schools at a cost not to exceed $———, yes.' 'For levying a tax to purchase ——— site (or sites) and erect ——— building (or buildings) for the centralization of schools at a cost not to exceed $———, no,' and if more votes are cast in favor of levying said tax for said purpose than against said proposition, at such election, it shall be the duty of the said board of education, and the board of education is authorized to issue bonds and sell the same as provided by law and to levy a special tax to provide for the payment of the same together with interest thereon; provided, said levy shall not in any one year exceed five mills on the dollar valuation and said bonds shall not bear more than six per cent. interest and shall not be sold at less than their face value." (94 O. L. 317.)

It will be observed that Sec. 3927–4 Rev. Stat. provides: "Should the board of education deem it necessary to issue bonds to purchase a site or sites or erect a building or buildings for the purposes of such centralization, then the election shall be conducted as provided in section three of this act, but in such case the ballot shall have printed thereon: 'For levying a tax to purchase ——— site (or sites) and erect ——— building (or buildings) for the centralization of schools at a cost not to exceed $———, yes,'" and then the same with answer no—so that when the board of education determined it was necessary to issue bonds and levy a tax to pay the same to obtain a site and erect a building that was the proposition that should have been submitted to the electors of the township, and for centralization and against centralization should not have been upon the ballots at all; and the vote being in the negative upon the question of levying a special tax it was equivalent to voting against centralization. But if we were wrong in this construction of the statute, still the writ should not issue. In State v. Shelby Co. (Comrs.), 36 Ohio St. 326, it is said in the opinion on page 331:

"Mandamus will lie only where there is a plain dereliction of duty upon the part of public officers, and can never be invoked to control dis-

cretion which is being exercised in good faith and with a sole view to the public welfare."

While the respondents were determinedly opposed to centralization and did all they could to defeat it, yet no bad faith is shown on the part of the board. The statutes require that the old board should proceed at once to the centralization of the schools, but it could not do so for the want of funds except in the purchase of a site costing $150. The new board was met with the same difficulty. The electors had said centralize if you can do so with what money you can raise with the regular levy; that could not be done except by waiting for a number of years; the board would not be justified in accumulating money year by year for a number of years which was liable to be squandered illegally. Such an act, instead of being "in good faith and with a sole view to the public welfare," would have been in bad faith. The writ of mandamus must be refused, and the petition of plaintiff dismissed at his costs.

---

## INSURANCE.

[Franklin Circuit Court, January Term, 1903.]

Wilson, Sullivan and Summers, JJ.

### STATE V. AMAZON INSURANCE COMPANY.

UNLAWFUL INSURANCE BY FOREIGN INSURANCE COMPANY—NOT NECESSARY TO INSURE PROPERTY IN OHIO.

A fire insurance company, organized under the laws of another state, that maintains an office in this state and there enters into contracts of insurance respecting property in other states, or transacts the business of insurance respecting property in other states, is engaged in this state in the transaction of the business of insurance contrary to law, notwithstanding it does not enter into contracts of insurance with citizens of this state, nor insure property in the state.

Geo. H. Jones, assistant attorney general, for plaintiff, cited:

What constitutes contract of fire insurance. Commonwealth v.; Wetherbee, 105 Mass. 149; Wilson v. Hill, 44 Mass. (3 Metc.) 66; Disbrow v. Jones, Harr. Ch. (Mich.) 48; May Insurance (ed. 1873), Sec. 6; Carpenter v. Insurance Co., 41 U. S. (16 Pet.) 495.

To have a known place of business in a state where the business of the corporation is prosecuted, helped forward or managed, is doing business. Solomon v. Webster, 4 Colo. 353, 367; Cooper Mfg. Co. v. Ferguson, 113 U. S. 727 [5 S. Ct. Rep. 739].

An insurance company in Ohio, aiding in the transaction of its businesss of insurance, is amenable to the laws of Ohio relating to